[Crim. No. 693.   Fourth Dist.   Nov. 21, 1950.]

THE PEOPLE, Respondent, v. CLAYTON MIZE, Appellant.

Taylor F. Peterson for Appellant.

Fred N. Howser, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged, by information, that on August 31, 1949, he robbed one W. A. Wiley of $112.67, by force and fear. After conviction by a jury of first degree robbery, he appealed. It was ordered that judgment run consecutively with the judgment pronounced in 4 Crim. No. 688 (*People* v. *Mize, ante,* p. 578 [224 P.2d 448]), this day affirmed on appeal.

Wiley, a ticket agent at the Santa Fe depot in Riverside, testified that on August 31, 1949, at about 9:25 p. m., he was at his office; that two men walked by the window; that one, who had a revolver in his hand and who pointed it at Wiley, said: "Let me have your receipts for the day"; that he subsequently opened the safe after one of the men started to

scuffle with him; that one man picked up the cash drawer and ordered the complaining witness to "Lie down on the floor"; that the two men left with the drawer and $112.67. The complaining witness testified that it was defendant Mize who did the talking and used the gun; that defendant wore a peculiar bronze tinted set of dark glasses; that he was bareheaded, about 30 years of age, and weighed about 150 pounds; that he was slender and had wavy dark brown hair with high temples; and that the revolver had a groove down each side of the barrel. He then testified that "there is no question in my mind as to the identity of the defendant as being the man" who held him up on August 31. He testified that during the following week several men were brought to him for identification but they were not the ones implicated.

Defendant was apprehended in Sacramento about 10 weeks later. An old revolver was found in his suitcase with five loaded shells. A pair of dark-colored glasses was found in his property.

On his return to San Bernardino by the arresting officers, one Shockley, a former deputy sheriff, testified that he interviewed defendant about a San Bernardino robbery and after confessing facts pertaining to it, defendant asked him if he (Shockley) knew anything about the Santa Fe depot job in Riverside; that Shockley said: "No, why?—was that one of your jobs?" and that defendant said: "Yes."

Some time after defendant's arrival in San Bernardino, the complaining witness was taken to the San Bernardino County Jail by Officer Vecchio, of Riverside. The complaining witness identified defendant from several pictures shown to him. Thereafter, defendant was identified in person by the complaining witness. The officers, out of the presence of the complaining witness, interviewed the defendant, and both related on the witness stand that defendant at that time, without offer of inducement, said: "Yes, I was in on the job" (Santa Fe depot job); that the eyeglasses found on defendant were the glasses he then wore and that the gun (the 38 caliber H & R revolver) was used by him and that it was his; that defendant refused to tell who else was implicated.

Defendant, who elected to defend himself at the trial without the aid of an attorney, then testified that he took no part in that robbery; that he owned the gun and carried it because he and his father were mining prospectors; that he made no statement to the officers as related, either on the return trip from Sacramento or at the jail; that although he was kept

in isolation at the jail for 22 days, the officers used no force upon him; that they shook hands with him after the interview and told him they were sorry to have bothered him; that they said Riverside was not "going to file" charges against him and to "forget about it"; that he was quite surprised to find that they filed charges in that county as well as in San Bernardino County.

He then claimed an alibi, stating that on August 31, he was at home, and had never been at the Santa Fe depot and could prove it by his mother and father. The father was not called as a witness for him. The mother testified but was not questioned by the defendant as to defendant's whereabouts on the night of August 31.

On appeal defendant, through his attorney, admits that the evidence produced by the prosecution was sufficient to support the judgment but argues that the testimony of Officer Shockley in reference to the claimed confession was unworthy of belief and that the court erred in giving and refusing certain instructions.

There was testimony of another deputy sheriff which corroborated the testimony of Officer Shockley in all respects, and his testimony stands unimpeached. The circumstances surrounding the commission of the crime, the claimed admissions and confessions of the defendant, as well as the positive identification of defendant by the complaining witness precludes us from saying that there was a lack of identification of defendant as the offender, even if we should disregard the testimony of Officer Shockley.

The court gave an instruction in the language of CALJIC Instruction No. 29, page 33, defining a confession and an admission and unfortunately the court fell into the pitfall of stating therein: "But even if you should find that a confession was false, either entirely or in part, it remains, nevertheless evidence for your consideration, to be given such significance as your judgment may determine *under instructions that I shortly shall give concerning false statements made by a person accused of crime,*" without the jury being further instructed on the subject. This procedure was criticized in *People* v. *Ford,* 89 Cal.App.2d 467, 473 [200 P.2d 867], in which case a reversal was ordered because there was only *slight circumstantial evidence* of defendant's guilt aside from the confession. This case was discussed in *People* v. *Liss,* 35 Cal.2d 570 [219 P.2d 789], and it is there said, as it must

be here held, that there was an abundance of substantial evidence entirely independent of a confession, to support the verdict. No prejudicial error resulted. (See, also, *People* v. *Woods*, 35 Cal.2d 504, 511 [218 P.2d 981].)

█ There was no error in the court's refusal to give defendant's requested instructions in the language of CALJIC Instructions Nos. 51, 51-A and 51-B, pages 68-70, pertaining to defendant's failure to testify. The defendant did testify in his own behalf. Therefore, the instructions refused had no application to the facts presented. (*People* v. *Meacham*, 84 Cal.App.2d 193, 202 [190 P.2d 262].)

█ Next, defendant complains because the trial court refused to instruct the jury that when a case rests "*entirely or chiefly* on *circumstantial evidence*", each essential fact must be proved beyond a reasonable doubt, citing *People* v. *Navarro*, 74 Cal.App.2d 544 [169 P.2d 265]. The evidence here presented does not rest *entirely* or *chiefly* on circumstantial evidence and therein lies the distinction. (See, *People* v. *Koenig*, 29 Cal.2d 87, 91 [173 P.2d 1].)

█ Lastly, it is argued that although the trial court gave an instruction as to how a witness might be impeached, it was the court's duty, on its own motion, to give one as to the effect of impeachment, citing *People* v. *Putnam*, 20 Cal.2d 885, 890 [129 P.2d 367]; and *People* v. *Malicoat*, 89 Cal.App. 2d 742 [201 P.2d 850].

An instruction was given in the language of CALJIC Instruction 52 (Alternate), page 72, which, as we view it, when considered with other instructions on the subject, sufficinetly covered the question presented. The general instructions, as given, properly covered the subject matter and the issues raised and, if deficient, it was only by reason of its generality.

█ It is the established rule of law that an injured party may complain upon appeal only in case he requests that the instruction be made more specific or asks for other qualifying instructions and his request is refused. (8 Cal.Jur. p. 309, § 362; *People* v. *Williams*, 184 Cal. 590 [194 P. 1019]; *People* v. *Weber*, 149 Cal. 325 [86 P. 671]; 8 Cal.Jur. p. 632, § 607; 24 Cal.Jur. p. 796, § 74.)

█ The record bears no evidence that defendant ever made or that the court ever ruled upon a motion for a new trial. The attempted appeal therefrom is dismissed.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.